592 A.2d 279

PAMELA PROBST, PETITIONER–APPELLANT, v. BOARD OF EDUCATION OF THE BOROUGH OF HADDONFIELD, CAMDEN COUNTY, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 5, 1991—Decided June 21, 1991.

Before Judges ANTELL and KEEFE.

*Kenneth A. Sandler* argued the cause for the appellant (*Selikoff & Cohen,* attorneys; *Joel S. Selikoff,* of counsel; *Kenneth A. Sandler,* on the brief).

*Joseph F. Betley* argued the cause for the respondent, Haddonfield Board of Education (*Capehart & Scatchard,* attorneys; *Alan R. Schmoll,* of counsel; *Joseph F. Betley,* on the brief).

*Robert J. Del Tufo,* Attorney General of New Jersey, attorney for respondent State Board of Education (*Marlene Zuberman,* Deputy Attorney General, on the statement).

The opinion of the court was delivered by

KEEFE, J.A.D.

The issue to be decided is whether a full-time teacher who is employed in a school district that has adopted a salary schedule pursuant to *N.J.S.A.* 18A:29–4.1 and has her employment and adjustment increments withheld for one school year pursuant to *N.J.S.A.* 18A:29–14 must be returned to the salary schedule in the next succeeding year after the increments were withheld, albeit one step behind other teachers with the same employment experience as petitioner. We conclude that a teacher must be so restored and reverse the decision of the State Board of Education.

The facts are not in dispute. Petitioner, Pamela Probst, is a tenured teacher employed by the respondent, Haddonfield Board of Education (Board). In school year 1986–87, petitioner received an annual salary of $25,000. That salary corresponded to a middle step (J/K) on the salary guide (applicable to teachers with baccalaureate degrees) which the Board had adopted for its teaching staff for a three year period commencing in the school year 1986–87.[1]

At a June 25, 1987 public meeting, the Board voted to withhold petitioner's employment and adjustment increments

---

[1] The Board adopted a salary schedule without middle steps. However, the parties and the administrative tribunals below agreed that a teacher can be hired at a middle step and progress accordingly.

| STEP | MIDDLE STEP | 1986–1987 | 1987–1988 | 1988–1989 |
|------|------|------|------|------|
| J | | $24,600 | $25,900 | $27,200 |
| | J/K | 25,000 | 26,300 | 27,600 |
| K | | 25,400 | 26,700 | 28,000 |
| | K/L | 25,800 | 27,100 | 28,400 |
| L | | 26,200 | 27,500 | 28,800 |
| | L/M | 26,600 | 27,900 | 29,200 |
| M | | 27,000 | 28,300 | 29,600 |

for school year 1987–88, pursuant to *N.J.S.A.* 18A:29–14.[2]  As a result of this withholding, petitioner received the same $25,000 salary in the 1987–88 school year as she had in the 1986–87 school year, instead of progressing to the K/L level where she would have received $27,100.

Petitioner's teaching performance during the 1987–88 school year was satisfactory.  Accordingly, the Board took no action to withhold increments from her salary for the 1988–89 school year, nor did the Board take action to restore petitioner's previously withheld increments.  It established her salary at $27,100 for the 1988–89 school year.  The $27,100 salary represented a $2,100 increase from petitioner's previous year's salary of $25,000 based upon the employment increment of $800, and the adjustment increment of $1,300 established in the collective bargaining agreement.  Both parties agree that had the petitioner's increments not been withheld in 1987–88, her salary in 1988–89 would have been $29,200, the amount shown at middle step L/M in the bachelor's column of the 1988–89 salary guide.  Petitioner has never challenged the Board's action withholding her 1987–88 increment and thus has never claimed entitlement to the $29,200 salary (step L/M) in 1988–89.  However, petitioner challenged the Board's action in establishing her 1988–89 salary at $27,100, claiming that she should have been restored to the salary schedule at the next middle step K/L and received $28,400.

The chart below illustrates, (A) the salary amounts the petitioner received; (B) the amounts she claims she should have received for the contract years 1986–87 through 1988–89 and

---

[2]The definition of employment and adjustment increments can be found only in *N.J.S.A.* 18A:29–6, now repealed.  Generally speaking, however, an employment increment is the increase in salary based upon years of employment while an adjustment increment is the increase in salary gained by collective bargaining to reflect other economic factors.  Although the definitional section was repealed, the Legislature did not repeal *N.J.S.A.* 18A:29–14 which maintains the distinction between the two concepts.

two subsequent years to show the economic consequences of the Board's action; and (C) the amounts she would have received absent the withholding.

|  | A | B | C |
|---|---|---|---|
| 1986–87 | $25,000 | $25,000 | $25,000 |
| 1987–88 | 25,000 | 25,000 | 27,100 |
| 1988–89 | 27,100 | 28,400 | 29,200 |
| 1989–90 [3] | 29,400 | 30,700 | 31,500 |
| 1990–91 | 32,050 | 33,200 | 34,150 |
|  | $138,550 | $142,300 | $146,950 |

As can be seen by reference to the chart, a $2,100 differential has been maintained in each year's salary subsequent to 1987–88. This has been accomplished by reducing the salary petitioner would have received had there been no increment withholding by $2,100. (Column C − $2100 = Column A).

The Administrative Law Judge, in his initial decision, found that when a board adopts a salary schedule pursuant to *N.J. S.A.* 18A:29–4.1, it must place all full-time teaching staff members on the salary guide absent a withholding action for that year. Thus, the ALJ found that petitioner should have been placed on step K/L of the Board's 1988–89 salary guide, requiring the Board to pay petitioner $28,400. He concluded that petitioner should recover $1,300, the difference between $28,400 and the $27,100 that petitioner was paid that year. The $1,300 is the equivalent of an adjustment increment for one year.

The Commissioner adopted the ALJ's decision, holding that in calculating petitioner's current salary, the Board was required to move petitioner across the salary guide and place her on the next step of the guide for the 1988–89 year since it had not withheld her adjustment increment for that year.

The State Board reversed the Commissioner's decision and held that the Board properly determined petitioner's salary for the 1988–89 school year. The State Board noted that once a

---

[3] A new contract was entered into for the three year period 1989–90 to 1991–92 with different employment and adjustment increments for that period.

local board withholds a teacher's employment and adjustment increment, unless the local board takes affirmative action to restore it, a teacher will always lag behind his or her colleagues by the real dollar figure represented by the local board's earlier action. Petitioner disagrees and appeals the State Board's decision.

It is axiomatic that "[a]n appellate tribunal is ... in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." *Mayflower Securities v. Bureau of Securities*, 64 *N.J.* 85, 93, 312 *A.2d* 497 (1973). Therefore, "[a]ny agency's determination of a question of law is subject to *de novo* review by the reviewing court." *Baylor v. Dept. of Human Services*, 235 *N.J.Super.* 22, 26, 561 *A.2d* 618 (App.Div.1989). "The construction of statutes is a judicial, not an executive function, [citation omitted], and the qualification to the familiar principle that administrative construction should be accorded considerable weight is as well-established as the principle itself." *Service Armament Co. v. Hyland*, 70 *N.J.* 550, 561, 362 *A.2d* 13 (1976). "In keeping with its judicial duties, a court is bound to override an administrative construction where it is clearly contrary to the plain meaning of the statute." *Id.* at 562, 362 *A.2d* 13. In any event, under the circumstances of this case, the deference given to the agency is of no great moment as there is a split within the agency itself. The Commissioner and the State Board disagree on how the relevant statutes must be interpreted.

Petitioner argues that the State Board's interpretation of the relevant statutes is contrary to the plain meaning of *N.J.S.A.* 18A:29–4.1. The statute provides as follows:

A board of education of any district may adopt a one, two or three year salary policy, including salary schedules for all full-time teaching staff members which shall not be less than those required by law. *Such policy and schedules shall be binding upon the adopting board and upon all future boards in the same district for a period of one, two or three years from the effective date of such policy* but shall not prohibit the payment of salaries higher than those required by such policy or schedules nor the subsequent adoption of policies or schedules providing for higher salaries, increments or

adjustments. Every school budget adopted, certified or approved by the board, the voters of the district, the board of school estimate, the governing body of the municipality or municipalities, or the commissioner, as the case may be, shall contain such amounts as may be necessary to fully implement such policy and schedules for that budget year.

*N.J.S.A.* 18A:29–4.1 (emphasis added). The petitioner relies upon the underlined portion of the statute and argues that it clearly and unequivocally requires the Board to pay all teachers according to the salary schedule adopted by it.

■ However, despite her plain language argument, petitioner acknowledges that the local board does not have to pay according to the established salary schedule where it acts to withhold increments in a given school year in accordance with *N.J.S.A.* 18A:29–14. Thus, petitioner acknowledges that it was appropriate for her to have been paid "off-guide" for the 1987–88 school year even though, according to her argument, *N.J.S.A.* 18A:29–4.1 "binds" the Board to pay in accordance with the salary guide. Petitioner's argument itself makes it clear that the wording of *N.J.S.A.* 18A:29–4.1 does not resolve the issue presented by this appeal but, rather, requires *N.J.S.A.* 18A:29–4.1 to be read in *pari materia* with *N.J.S.A.* 18A:29–14. This conclusion is buttressed by the fact that both statutes were passed as a part of *L.*1967, *c.* 271, effective January 11, 1968. Thus, they are part of a common statutory enactment and should be reconciled to the extent possible. Subsequent amendments to each statute have not substantially changed their principal concepts.

With that thought in mind it is appropriate to point out that *N.J.S.A.* 18A:29–14 allows for the withholding of either the employment increment or the adjustment increment, or both, in a particular school year. The statute also provides that "[i]t shall not be mandatory upon the Board of Education to pay any such denied increment in any future year as an adjustment increment." In the case under review, the Board withheld petitioner's employment increment of $800 and her adjustment increment of $1,300, for a total withholding of $2,100 for the 1987–88 school year. The petitioner concedes that she should

not have received the $27,100 salary she was scheduled to receive in 1987–88 absent a withholding, but she claims that she should have been placed at the middle step K/L for the 1988–89 year, which provided a $28,400 salary. At that step on the guide, petitioner remains one step behind those teachers who were on her step in the 1986–87 school year, and, thus, she incurs a real dollar loss each year by reason of the Board's withholding of her employment increment. However, the Board's calculation of her salary in subsequent years keeps her not only one step behind on the guide but also continues to deduct on a yearly basis the $1,300 economic adjustment which is intended to apply only for the one year in which it was withheld.

We believe that the Commissioner's decision, which incorporates the ALJ's decision, more closely achieves the statutory design evidenced by the interrelationship of *N.J.S.A.* 18A:29–4.1 and *N.J.S.A.* 18A:29–14. By restoring petitioner to the salary guide in 1988–89, the Commissioner recognized the legislative intent to have teachers paid in accordance with the salary guide where one has been established by the local board. In so doing, the Commissioner does not, as the State Board contends, circumvent the legislative statement found in *N.J.S.A.* 18A:29–14; "[i]t shall not be mandatory upon the board of education to pay any such denied increment in any future year as an adjustment increment." In restoring petitioner to the salary guide at the K/L step in 1988–89, petitioner remains one step behind those other teachers who were on the same level with her in 1986–87. In addition, the $1,300 economic adjustment withheld by the Board in 1987–88 remains lost to her.

The action of a local board in one year may have permanent economic impact on the teacher in that the teacher remains one step behind and permanently loses the economic adjustment for that year; however, it is not intended to have the impact of "a new violation each year...." *North Plainfield Educ. Ass'n v. Bd. of Educ.*, 96 *N.J.* 587, 595, 476 *A.*2d 1245 (1984); *Cordasco v. Bd. of Educ. of City of East Orange*, 205 *N.J.Super.* 407,

411, 501 *A*.2d 171 (App.Div.1985). Under the State Board's ruling, the local board's decision in 1987 has the effect of a continuing violation each year thereafter because it permits the local board to reduce petitioner's salary each year by not only the employment adjustment (the level differential) but also an additional $1,300 representing an economic adjustment. Thus, petitioner continues to receive a $1,300 punishment each year without an affirmative resolution of the Board. This, in our view, is not the intent of *N.J.S.A.* 18A:29-14.

The decision of the State Board is reversed and the Commissioner's decision is reinstated.