NORTH PLAINFIELD EDUCATION ASSOCIATION, ON BEHALF OF ARLENE KOUMJIAN AND MICHEL SPRATFORD, RESPONDENTS, v. BOARD OF EDUCATION OF THE BOROUGH OF NORTH PLAINFIELD, SOMERSET COUNTY.

Argued March 19, 1984—Decided June 28, 1984.

588

*Regina Murray Mahoney,* Deputy Attorney General, argued the cause for appellant State Board of Education (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Deborah T. Poritz,* Deputy Attorney General, of counsel).

*Arnold S. Cohen* argued the cause for respondents (*Rothbard, Harris & Oxfeld,* attorneys; *Sanford R. Oxfeld,* of counsel and on the brief).

PER CURIAM.

The narrow question on this appeal is whether the petition of two teachers to the Commissioner of Education (the Commissioner) is time barred by *N.J.A.C.* 6:24–1.2, which requires that such a petition be filed within ninety days of the challenged action. In the petition, the teachers sought credit on the salary scale for time spent on sabbatical. The teachers, however, did not file their petitions until more than nine months after the expiration of the ninety-day period.

An administrative law judge (ALJ) concluded that the petition had been filed out-of-time. The Commissioner affirmed the findings of the ALJ, and the State Board of Education (the State Board) affirmed the decision of the Commissioner.

In an unreported decision, the Appellate Division reversed the State Board, reasoning that the teachers had a statutory right to credit on the salary scale without regard to performance and that the time bar of *N.J.A.C.* 6:24–1.2 could not affect that right. We granted certification. 95 *N.J.* 205 (1983). We now reverse the judgment of the Appellate Division and reinstate the decision of the State Board.

## I

The undisputed facts are that Arlene Koumjian and Michel Spratford are tenured teachers employed by the North Plainfield Board of Education (the Board). Pursuant to the collective bargaining agreement between the Board and the North Plainfield Education Association (the Association), the teachers took a sabbatical leave for the second semester of the 1978–79 academic year to pursue full-time graduate study. Each received 75% of full pay and earned a master's degree while on sabbatical.

At the beginning of their sabbaticals, Koumjian was on step seven and Spratford was on step eight of the bachelor's degree category of the salary guide. When they returned to classroom teaching in September 1979, each remained on the same step, although in the master's degree category for the 1979–80 year. They did not receive credit for time spent on sabbatical for purposes of advancing along the salary scale, but they received a salary increment because of their placement in the master's degree category.

On November 12, 1979, the Association filed a grievance with the Board claiming that the failure to move the teachers to the next step on the salary guide for the school year 1979–80 constituted a violation of the negotiated agreement. The Board denied the grievance and the Association sought arbitration. On July 22, 1980, the arbitrator ruled in favor of the Board, finding that the agreement between the Board and the Association did not provide for the accumulation of credit on the salary scale for time spent on sabbatical. The arbitrator found further that the Board's practice was to deny credit for time spent on sabbatical and that the Association unsuccessfully had attempted to amend the labor agreement in 1978 by adding a provision that a teacher on sabbatical "shall not suffer loss of status on salary guide." The teachers neither denied knowledge of the Board's practice nor sought to correct or modify the award. See *N.J.S.A.* 2A:24–7.

The following school year, 1980–81, each teacher advanced one step on the guide—*i.e.*, Koumjian advanced to step eight and Spratford to step nine. On September 29, 1980, the Association filed a petition with the Commissioner requesting an order directing the Board to advance the teachers an additional step, *i.e.*, to move Koumjian to step nine and Spratford to step ten. In essence, the teachers sought prospective relief that would obviate the denial of credit for the time spent on sabbatical and would reverse the Board's decision for future years.

Under *N.J.S.A.* 52:14F-1 to -11, the Commissioner transferred the matter as a contested case to the Office of Administrative Law. The ALJ granted a motion to dismiss the petition as having been filed out-of-time, finding that petitioners knew that they would not receive credit for time spent on sabbatical when they received their pay checks around September 15, 1979. Nonetheless, petitioners did not file their petition with the Commissioner until more than a year later on September 29, 1980. Because this appeal focuses on the timeliness of the filing of the petition, we do not address the substantive issue whether the Board acted correctly in denying the annual increment.

## II

Public school teachers receive a wide range of employment benefits, some provided by statute and others by collective negotiations, the objects of which are to provide economic security to teachers and to enhance the quality of education of school children. The statutory benefits include minimum salary schedules (*N.J.S.A.* 18A:29-7); higher rates of pay for attaining certain advanced academic degrees (*N.J.S.A.* 18A:29-7); full credit in terms of employment increments and seniority for up to four years of service in the armed forces (*N.J.S.A.* 18A:29-11); and annual increments of at least $250 (*N.J.S.A.* 18A:29-7) for each year of service in the school district (*N.J.S.A.* 18A:29-8) until the maximum salary is reached.

The present controversy concerns the annual increment under *N.J.S.A.* 18A:29–8, which provides:

> Any member holding office, position or employment in any school district of this state, shall be entitled annually to an employment increment until he shall have reached the maximum salary provided in the appropriate training level column in the preceding section.

A teacher's entitlement to a salary increase under *N.J.S.A.* 18A:29–8 is subject to denial by a school board "for inefficiency or other good cause * * *." *N.J.S.A.* 18A:29–14. That is, the annual increment is in the nature of a reward for meritorious service to the school district. *Board of Educ. of Bernards Tp. v. Bernards Tp. Educ. Ass'n,* 79 *N.J.* 311, 321 (1979). Evaluation of that service is a management prerogative essential to the discharge of the duties of a school board. *See id.; Clifton Teachers v. Clifton Bd. of Educ.,* 136 *N.J.Super.* 336, 339 (App.Div.1975). The determination of an annual increment after evaluation by a school board serves the dual statutory objectives of affording teachers economic security and of encouraging quality in performance.

Fundamental to the decision of the Appellate Division is its misperception of the increment as a "statutory entitlement unrelated to the teachers' qualifications, performance or quality of teaching services rendered." The Appellate Division arrived at that conclusion by analogizing the annual increment under *N.J.S.A.* 18A:29–8 to one accruing to a teacher who has served in military service during wartime. Under *N.J.S.A.* 18A:29–11, such a teacher "shall be entitled to receive equivalent years of employment credit for such service as if he had been employed for the same period of time * * * " in a public school.

As explained by Justice Schreiber in *Lavin v. Hackensack Bd. of Educ.,* 90 *N.J.* 145 (1982):

> The legislative purpose of *N.J.S.A.* 18A:29–11 is to reward veterans for service to their country in time of war. The reward takes the form of crediting the military service as teaching experience even though there is no functional relationship between the two. The credit has the effect of increasing the number of dollars to which the teacher who is a veteran is entitled. The emolument is not for services rendered or to be rendered for school teaching as

such. It was established by the Legislature as a reward or bonus for service in the military, and not for performance as a teacher. Accordingly, the payment should be considered as a statutory entitlement, rather than as an element of the employment contract. That being so, the statute of limitations is inapplicable. [*Id.* at 151.]

■ From that perspective, salary increments accruing under *N.J.S.A.* 18A:29–11 are distinctly different from those awarded under *N.J.S.A.* 18A:29–8. The annual increment under *N.J.S.A.* 18A:29–11 accrues because of time spent in military service without regard to performance as a teacher. By contrast, the annual increment under *N.J.S.A.* 18A:29–8 is subject to annual evaluation of teacher performance. Consequently, that Court's analogy of an annual increment to the statutory entitlement for veterans is invalid.

■ The Appellate Division's misperception of the annual increment is relevant to determining the timeliness of the filing of the teachers' petition. If the annual increment were a statutory entitlement, as the Appellate Division concluded, the ninety-day period of limitations contained in *N.J.A.C.* 6:24–1.2 would not apply, and the petition for prospective relief would have been timely. Because the award of the annual increment is not a matter of statutory right, but is subject to "denial for inefficiency or other good cause," *N.J.S.A.* 18A:29–14, it is subject to the time bar provided in the regulation issued by the Commissioner pursuant to that statute. The relevant regulation, *N.J.A.C.* 6:24–1.2, provides that a petition to determine a controversy under the school laws "must be filed within 90 days after receipt of the notice by the petitioner of the order, ruling or other action concerning which the hearing is requested."

■ The ALJ found that the teachers were aware of the challenged action when they received their first paycheck for the 1979–80 school year—*i.e.*, about September 15, 1979. From that paycheck, the teachers knew that they had not received their annual increment and that they had not advanced on the salary scale. Their petition was not filed until September 29, 1980, more than nine months after the expiration of the ninety-

day period of limitations. Consequently, the ALJ correctly concluded that the petition was time-barred.

The teachers contend, and the Appellate Division agreed, that although the time bar may apply to the 1979–80 increment, it does not apply to future years. That is, the teachers seek to circumvent the time bar by requesting relief for the years 1980–81 and thereafter. On that premise, the ninety-day period of limitations would not run, for example, until the teachers received notice of their position on the 1980–81 salary guide. We disagree.

■ The teachers' asserted right to advance an additional step on the 1980–81 salary guide depends on the propriety of the Board's action in not advancing them on the 1979–80 guide. The time bar of the original action also precludes the dependent action for relief in future years.

■ Nor does the withholding of the increment constitute a continuing violation. Such a claim, which is associated with the assertion of discrimination in employment, has no relevance to this case. Furthermore, the fact that the teachers will always lag one step behind is not attributable to a new violation each year, but to the effect of an earlier employment decision, one that is protected by the regulatory period of limitations. *Cf. Delaware State College v. Ricks*, 449 *U.S.* 250, 258, 101 *S.Ct.* 498, 504, 66 *L.Ed.*2d 431, 440 (1980) (limitations period applicable to employment discrimination claim began to run when teacher was notified of employer's decision to deny tenure).

We reverse the judgment of the Appellate Division and reinstate the decision of the State Board of Education.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance*—None.