703 A.2d 381

RANDOLPH TOWNSHIP BOARD OF EDUCATION, PLAINTIFF–
APPELLANT, v. RANDOLPH EDUCATION ASSOCIATION,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 10, 1997—Decided December 22, 1997.

Before Judges SHEBELL, D'ANNUNZIO and COBURN.

*Aron M. Schwartz,* argued the cause for appellant (*Vogel, Chait, Schwartz And Collins, P.C.,* attorneys; *Mr. Schwartz,* of counsel; *Mr. Schwartz* and *David H. Soloway,* on the brief).

*Linda Ganz Ott,* argued the cause for respondent (*Bucceri & Pincus,* attorneys; *Ms. Ott,* of counsel, and on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On January 15, 1997, the Randolph Township Board of Education (Board) filed a verified complaint and Order to Show Cause in the Chancery Division against the Randolph Education Association (Association), seeking to enjoin arbitration filed for by the Association with the New Jersey Public Employment Relations Commission (PERC). The Association sought to contest the Board's decision to withhold a salary increment from Kathryn Hintz, an administrative secretary in the Township High School, who was an Association member. On February 19, 1997, the Association answered and asserted three defenses, including that the Chancery Division does not have jurisdiction to hear the dispute, since PERC has primary jurisdiction. A hearing on the Order to Show Cause was held and the judge ruled that the court lacked jurisdiction. On March 18, 1997, an order was entered dismissing the complaint. The Board appeals.

Pursuant to the 1995–98 collectively negotiated agreement (Contract) between the Board and the Association, the salaries of covered employees are determined according to an agreed upon salary guide. Annually, an employee who is performing satisfactorily may, after evaluation by a supervisor and upon recommendation of the Superintendent, be awarded increments by the Board. The right to receive increments and adjustment on the guide is not automatic, and pursuant to Article XV.B. of the Contract, the Board retains the right to deny an increment for inefficiency or other good cause. Article III.B.4.c. provides that binding arbitration does not apply to the withholding of salary increments.

Over the course of her employment, Hintz has had difficulty with her attendance due to an ongoing medical problem that required several hospitalizations. Nonetheless, she received favorable ratings in all of the professional characteristics and competency categories. Despite excessive absences, in the 1991–92, 1992–93, 1993–94, and 1994–95 school years, she was recommended for the normal salary increment.

Hintz's evaluation for the 1994–95 school year, during which she missed a total of 42 days, states:

Mrs. Kathryn Hintz has demonstrated competence in her performance as Attendance Secretary. She needs little if any supervision in completing her assignments. Her work is highly professional and consistently reflects her pride in her work. She has often made suggestions which have improved the Attendance Office operations. Mrs. Hintz has continued to demonstrate the ability to manage the multi-faceted demands of the Attendance Office most conscientiously. Her warmth and understanding have helped establish a positive rapport with our students and their parents.

Mrs. Hintz's attendance continues to be a concern. Through her employment over the past years, she has exceeded the sick day allowances each year. While it is understood that Mrs. Hintz does not intentionally use all her sick days, there has been no improvement. Because of the high rate of absenteeism, Mrs. Hintz's coworkers are required to cover for her which causes some of the responsibilities to go uncovered. While personal emergencies and medical problems can be understood, this seems to be an ongoing situation which has no remediation. While Mrs. Hintz has voluntarily worked extra time in order to complete tasks left unaccomplished during her absences, her absences create a hardship on coworkers.

Because of Mrs. Hintz's positive performance, I am recommending her increment be granted. It must be understood that if Mrs. Hintz's attendance record does not

show significant improvement, there will not be a recommendation for granting an increment in the future.

In Hintz's evaluation for the 1995–96 school year, it was recommended by her supervisor that the normal salary increment be withheld. Even though she received positive professional characteristic and competency ratings, her attendance did not improve. She used 12 sick days and three personal days and missed a total of 32 days as of January 19, 1996. After describing how her job performance was satisfactory, the evaluation noted:

> Despite Mrs. Hintz's performance as described above, one aspect of her performance (attendance) has remained unsatisfactory. During the past five years Mrs. Hintz has exceeded the sick day allowance each year. Being present on the job is an essential requirement of the job. The ongoing absences of the attendance secretary impacts on the school since it is imperative to maintain the attendance office function throughout the school day. Coverage requires that a secretary from another area of the building be assigned to accomplish the attendance office functions with the result that the covering secretaries functions go unattended. While conferences have been held and Mrs. Hintz was cautioned in her last annual evaluation that her attendance continued to be [a] problem area in her performance, there has not been significant improvement in the attendance problem. It was stated in Mrs. Hintz's last annual evaluation that "It must be understood that if Mrs. Hintz's attendance record does not show significant improvement, there will not be a recommendation for granting an increment in the future."

> Because there has not been significant improvement in Mrs. Hintz's attendance, I am recommending the withholding of her increment for the 1996–97 school year.

This recommendation was accepted by the Superintendent and submitted by him to the Board. On April 16, 1996, the Board acted to freeze Hintz's salary at the current levels for the 1996–97 school year by denying her the employment salary increment and the salary guide adjustment increment.

The Board provided the following absence-related reasons, which it memorialized in a resolution passed on April 16, 1996:

1) Failure to adequately provide daily interaction with students, parents and staff.

2) Continual absence leaves the building short-handed of secretarial staff.

3) Upon return from absence catch-up work detracts from the ability to cover office adequately.

4) Consistency of responses to parents, students and staff impacted by absences.

5) Absences impact on office coverage in more than one department.

Following an unsuccessful appeal to the Board to reverse its decision, the Association requested that PERC submit Hintz's salary increment withholding to binding arbitration because it allegedly constituted discipline without just cause. In response, the Board filed its verified complaint in Chancery claiming that such arbitration would violate the collective bargaining agreement.

The Board argues that the Chancery Division had jurisdiction to hear the matter as a question of contractual arbitrability because the parties negotiated over and agreed on contract language governing both the standards for the grant or denial of increments to non-teaching personnel and the availability of the grievance procedure for resolution of disputes over the denial of an increment.

The Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –29, (Act) was passed to encourage the prompt settlement of labor disputes. *N.J.S.A.* 34:13A–5.2 establishing PERC granted it the authority to "make policy and establish rules and regulations concerning employer-employee relations in public employment relating to dispute settlement, grievance procedures and administration." PERC also has jurisdiction to determine whether a dispute falls within the scope of negotiations. *N.J.S.A.* 34:13A–5.4(d); *Ridgefield Park Educ. Assoc. v. Ridgefield Park Bd. of Educ.*, 78 *N.J.* 144, 154, 393 *A.2d* 278 (1978); *Bernards Township Bd. of Educ. v. Bernards Township Educ. Assoc.*, 79 *N.J.* 311, 316–17, 399 *A.2d* 620 (1979).

*N.J.S.A.* 34:13A–5.4(d) provides:

> The commission shall at all times have the power and duty, upon the request of any public employer or majority representative, *to make a determination as to whether a matter in dispute is within the scope of collective negotiations.* The commission shall serve the parties with its findings of fact and conclusions of law. Any determination made by the commission pursuant to this subsection may be appealed to the Appellate Division of the Superior Court.
>
> [Emphasis added.]

Additionally, PERC has been authorized to determine whether the withholding of an *employee* work site transfer or the withholding of a salary increment of a *teaching staff member* is predominantly

disciplinary. *N.J.S.A.* 34:13A–27(a). If PERC finds that the withholding is predominantly disciplinary, the dispute is submitted to binding arbitration, pursuant to *N.J.S.A.* 34:13A–29. *N.J.S.A.* 34:13A–27(c). However, the provision granting authority to PERC to determine whether the withholding of increments is disciplinary refers only to "teaching staff members" and not employees.

"Teaching staff member" is defined as:

a member of the professional staff of any employer holding office, position or employment of such character that the qualifications, for the office, position or employment, require him to hold a valid and effective standard, provisional or emergency certificate, appropriate to that office, position or employment, issued by the State Board of Examiners.

[*N.J.S.A.* 34:13A–22.]

As an administrative secretary, Hintz does not fall within the definition of a teaching staff member. Instead, she is classified as a non-teaching employee.

The question, therefore, arises whether PERC has the authority to determine whether the withholding of a non-teaching employee's salary increment was predominantly disciplinary and subject to binding arbitration. The Board argues that here PERC does not have jurisdiction, as negotiability is not an issue since the parties have already negotiated a contract that expressly precludes arbitration for salary increment withholding. We disagree.

■ The 1989 amendments to the Act clearly provide that "[d]isputes involving the withholding of an employee's increment by an employer for predominately disciplinary reasons shall be subject to the grievance procedures established pursuant to law and shall be subject to [binding arbitration]." *N.J.S.A.* 34:13A–26. The Act defines the term employer as including "any local or regional school district," *N.J.S.A.* 34:13A–22, and defines the term employee as meaning "employees of an employer as defined by this act." *Ibid.* We, therefore, conclude that a salary increment, even for a non-teaching employee, that is withheld for predominantly disciplinary reasons must be submitted to binding arbitra-

tion and that this procedure may not be replaced by the contract through negotiations. *See N.J.S.A.* 34:13A–5.3.

■ Even though the parties negotiated the issue of arbitrability of salary increments, this negotiated term is incapable of depriving employees of their rights to binding arbitration under *N.J.S.A.* 34:13A–29. As provided in *N.J.S.A.* 34:13A–5.3, the agreement of the parties arrived at through collective negotiations cannot supersede an alternate statutory appeal procedure. *N.J.S.A.* 34:13A–5.3, which governs collective negotiations, provides:

> Public employers shall negotiate written policies setting forth grievance and disciplinary review procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements, and administrative decisions, including disciplinary determinations, affecting them, provided that such grievance and disciplinary review procedures shall be included in any agreement entered into between the public employer and the representative organization. Such grievance and disciplinary review procedures may provide for binding arbitration as a means for resolving disputes. *The procedures agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure* nor may they provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws. . . . Grievance and disciplinary review procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.

> [Emphasis Added.]

Whether the statutory language means that all salary increment withholdings of non-teaching staff are deemed disciplinary and thus subject to binding arbitration need not be decided at this time.

■ We further hold that the jurisdiction of PERC extends to determining whether the withholding was predominantly disciplinary. We reject the argument that the express authority granted PERC to decide whether increment withholdings for teaching staff members are disciplinary or performance-based under *N.J.S.A.* 34:13A–27(a), compels the conclusion that PERC does not have jurisdiction over the same issues in a case involving non-teaching staff members. We note that the very same sentence of that section expressly grants PERC the authority to decide

whether the transfer of a non-teaching employee is predominantly for disciplinary reasons. *Ibid.*

Despite the ambiguity of this statutory provision, we are persuaded that the Legislative scheme established by the amendments contemplated that the determination as to whether a salary increment withholding is disciplinary or performance-based as it relates to non-teaching employees should lie with PERC. As noted, PERC regularly determines whether the withholding of a salary increment was disciplinary, pursuant to *N.J.S.A.* 34:13A–27. *See In re Edison Township Bd. of Educ. v. Edison Township Principals and Šup'rs Ass'n,* 304 *N.J.Super.* 459, 701 *A.2d* 459 (App.Div.1997) (reviewing PERC's decision that withholding of principal's salary increment was disciplinary). The entire purpose of the 1989 amendments was to provide an efficient and expeditions method of resolving disciplinary grievances through binding arbitration. *Scotch Plains–Fanwood Bd. of Educ. v. Scotch Plains–Fanwood Educ. Ass'n,* 139 *N.J.* 141, 154, 651 *A.2d* 1018 (1995). The ability to obtain the threshold decision as to arbitrability through PERC is essential to that goal. The determination is not one of contract for the Chancery Division.

We, therefore, affirm the order under review.